UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PETER FREUDENBERGER,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-745

Spiegel, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Peter Freudenberger filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On April 7, 2006, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB) alleging a disability onset date of March 28, 2006, due to a lower back injury which resulted in extreme pain in his lumbar spine and bulging disks. (Doc. 10-8 at 2-12, Doc. 10-9 at 7). He was 31 years old at the time of his alleged disability. (Doc. 10-8 at 2). On November 1, 2006, after Plaintiff's claims were denied initially and upon reconsideration, (Doc. 10-5 at 2-5, Doc. 10-6 at 2-14), he

requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Doc. 10-6 at 15).

On October 9, 2007, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Doc. 10-4 at 2-44). At the hearing, ALJ, Deborah Smith ("ALJ Smith"), heard testimony from Plaintiff, Plaintiff's wife, Udeet S. Freudenberger, and George E. Parsons, an impartial vocational expert. (*Id.*). On January 15, 2008, ALJ Smith entered her decision denying Plaintiff's SSI and DIB applications. (Doc. 10-5 at 6). However, on June 13, 2008, the Appeals Council remanded the matter to the ALJ under the new and material evidence provision of the Social Security Administration ("SSA") regulations, (20 CFR §404.970 and §416.1470), because of additional evidence not heard at Plaintiff's original hearing,[1] and directed the ALJ to offer Plaintiff another hearing and to, if necessary, obtain additional evidence from a medical expert and/or a vocational expert. (Doc. 10-5 at 16-20). Specifically, the Appeals Council's orders were as follows:

> Upon remand, the ALJ will:
>
> - Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, the Administrative Law Judge will evaluate Dr. James Plunkett's opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence

---

[1] On February 25, 2008, forty-one days after ALJ Smith's unfavorable decision, Dr. James M. Plunkett, one of Plaintiff's treating physicians at the Department of Veteran's Affairs, opined that Plaintiff's condition of chronic, progressive spondylotic low back pain that has been present since 1995, has now confined him to bed due to severe back pain, and has disabled him from substantial gainful employment for more than a year. (Doc. 10-16 at 25). Dr. Plunkett also noted that Plaintiff had a poor prognosis for improvement allowing return to work. (*Id.*). Dr. Plunkett also provided a medical source statement indicating that Plaintiff was significantly limited in his ability to perform even sedentary exertion. (*Id.* at 20-24).

2

> and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.
>
> - If necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments (20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p).
>
> - Obtain vocational evidence sufficient to allow a comparison between the claimant's residual functional capacity and the mental and physical demands of his past relevant work, as it is actually performed and as it is generally performed in the national economy (20 CFR 404.1560, 416.960 and Social Security Rulings 82-61 and 82-62). If consideration is given to step five of the sequential evaluation, the ALJ will obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(*Id.* at 19).

As a result of the Appeals Council's remand, a second evidentiary hearing was held before ALJ Smith on January 20, 2009, at which Plaintiff was represented by counsel. (Doc. 10-3 at 2-31). At the hearing, ALJ Smith followed the Appeals Council's remand order and heard testimony again from Plaintiff and George E. Parsons an impartial vocational expert.[2] (*Id.*). On March 20, 2009, ALJ Smith entered her second

---

[2] The Court notes that ALJ Smith, the ALJ in Plaintiff's first and second hearings, did not find it necessary pursuant to 20 CFR §404.1527(f) and §416.927(f) to hear additional medical evidence from an expert as she found nothing in the record to change her analysis in her original opinion on January 15, 2008. (Doc. 10-2 at 21).

decision denying Plaintiff's SSI and DIB applications, finding that Plaintiff had severe lower back impairments, but retained the residual functional capacity ("RFC") to perform a limited range of medium level work, including his past work as a compliance officer/patient agent. (Doc. 10-2 at 13, 19-20, 22). On September 4, 2009, the Appeals Council denied his second request for review. (Doc. 10-2 at 2-5).[3] Therefore, ALJ Smith's second decision stands as the Defendant's final determination.

ALJ Smith's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since March 28, 2006, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: a history of right L1 transverse process fracture, chronic lumbar strain, and lumbar degenerative disc disease (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

   ……………………

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

   ……………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work that requires him to stand or walk up to 6 hours in an 8 hour workday; sit up to 6 hours in an 8 hour workday; lift, carry, push, or pull up to 20 pounds frequently and up to 50 pounds occasionally; and bend, stoop, rotate at the waist, and reach from floor to waist occasionally.

   ……………………

---

[3] The Appeals Council noted that they, "found no reason under their rules to review the Administrative Law Judge's decision, dated March 20, 2009." (Doc. 10-2 at 2).

4

6. The Claimant is capable of performing his past relevant work as a compliance officer/patient agent. The work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

……………………

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 28, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Doc. 10-2, at 18-23). Thus, ALJ Smith concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB. (*Id.*).

On appeal to this Court, Plaintiff maintains that ALJ Smith erred by: 1) improperly dismissing the findings of treating physicians; and 2) inadequately assessing Plaintiff's pain and credibility. (Doc. 12, Doc. 19).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York,* 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen,* 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the Court should consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the SSA is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimants impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimants impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she

6

is entitled to disability benefits. 20 C.F.R. §404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. §423(d)(1)(A). In this case, Plaintiff alleges that ALJ Smith's two identified errors require this Court to reverse the Commissioner's decision.

### B. The ALJ's rejection of Treating Physician's Opinions

In his first assignment of error, Plaintiff complains that ALJ Smith failed to afford adequate weight to the opinions of the Plaintiff's treating physicians at the Veteran's Administration Center (the V.A.): Jeffrey T. Lekson, M.D. ("Dr. Lekson"), his primary care physician, and James M. Plunkett, M.D. ("Dr. Plunkett"), his pain specialist. 20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added).

#### 1. Dr. Lekson

On June 16, 2006, Plaintiff presented to Dr. Lekson for follow-up treatment of his reoccurring back pain. (Doc. 10-13 at 37). Dr. Lekson noted that he had last seen Plaintiff in March 2006 and, since that time, Plaintiff reported he was doing fairly well with the medications prescribed. (*Id.*). On August 11, 2006, after another examination, Dr. Lekson noted that he was limiting Plaintiff from any "significant lifting and repeatedly bending" with no other restrictions. (Doc 10-12 at 21).

7

On September 14, 2007, Dr. Lekson completed a Physical Capacities Evaluation form on Plaintiff's behalf. (Doc. 10-16 at 10-17). On that form, Dr. Lekson opined that Plaintiff could sit for six hours in an eight hour work day and stand/walk for two hours in an eight hour work day, with a sit/stand option. (*Id.* at 11). Plaintiff could use his hands for repetitive motion tasks, and he could use his feet for operating foot controls. (*Id.*). Plaintiff could only carry/lift less than ten pounds occasionally, and he could occasionally balance, stoop and kneel, but could never climb ramps, stairs, ladders, or scaffolds nor could he crouch or crawl. (*Id.* at 11-12). Dr. Lekson further opined Plaintiff should avoid exposure to extreme cold, dust, fumes, gasses and machinery. (*Id.* at 15). In an additional "clarifying" statement on October 4, 2007, Dr. Lekson wrote, "due to his medical condition, Plaintiff is effectively confined to bed approximately five-to-seven days in a good month and seven-to-ten days in a bad month." (*Id.* at 19). However, Dr. Lekson noted that Plaintiff's range of motion was "unlimited" in handling, fingering and feeling. (*Id.* at 14).

In both of her decisions ALJ Smith rejected the extreme limitations on Plaintiff's postural abilities suggested above by Dr. Lekson. On January 15, 2008, she wrote:

> [T]he extreme limitations suggested by Dr. Lekson are not supported by the objective medical evidence or findings on examination in the record, including the imaging reports and clinical examinations, and appear to be based primarily on the claimant's subjective reports. Other physicians at the V.A. noted in early 2006 that the claimant had a chronic back pain syndrome "with a heavy somatic focus out of proportion to the physical findings and imagining reports." (Doc. 10-14 at 13). Dr. Lekson himself noted in August 2006 that he was limiting the claimant from any "significant lifting and repeatedly binding" with no other restrictions mentioned. (Doc 10-12 at 21). Furthermore, Dr. Lekson is a primary care physician, not an orthopedic specialist. For these reasons, Dr. Lekson's opinion of the claimant's physical capacity is given little weight.

(Doc. 10-5 at 13). Plaintiff contends that the "extreme limitations" found by Dr. Lekson

8

were supported by ample objective evidence including: October 1995 x-ray findings of a fracture of the L1 transverse process (Doc. 10-11 at 3),[4] June 1995 discharge from the United States Army,[5] (Id. at 3) and an August 1999 CT scan of the lumbar spine showing minimal right annular fissuring at L3-4 and mild diffuse annular fissuring at L5-S1 (*Id.* at 9).[6]

Objective evidence relied upon by Dr. Lekson did reflect a diagnosis of a history of right L1 transverse process fracture, chronic lumbar strain, and lumbar degenerative disc disease that would support his assessment of extreme limitations. However, Dr. Lekson's examinations also showed that Plaintiff's diagnosis was categorized as minimal and mild and that he was managing his condition effectively by using the prescribed medications and treatment methods, such as ice packs, heating pads, massage, pillows, and a TENS unit to help alleviate the pain. (Doc. 10-3 at 10, Doc. 10-4 at 16, 18-23, Doc. 10-13 at 37). Plaintiff also complained of chronic right hip pain, but electromyography studies revealed no abnormalities, along with the bone scan, lumbar spine and hip x-rays. (Doc. 10-15 at 35-36).

Further, medical examiners and treatment providers repeatedly noted that neurological findings on examination were completely within normal limits and cited that, upon observation, Plaintiff walked without a limp and that he reported no bowel or

---

[4] In Plaintiff's Statement of Errors (Doc. 12), Plaintiff's counsel in referencing "ample objective evidence," cites Exhibit 1F p2., (i.e. Doc. 10-11 at 2). (Doc. 12 at 6). However, the Court notes that exhibit provides evidence relating to an injury Plaintiff sustained to his back, while in the United States Army, during April of 1995 rather than October, and that x-rays were normal at that time. The Court assumes that Plaintiff's counsel intended to direct its attention to Exhibit 1F p6., (i.e., Doc. 10-11 at 3), where such a diagnosis is present.
[5] Plaintiff's counsel provides no support for his allegation that Plaintiff was discharged from the United States Army in June of 1995 due to his chronic low back pain. However, after further research the Court assumes that Plaintiff's counsel is relying on said affirmation on Doc. 10-11 at 3.
[6] Plaintiff's counsel refers to a "mild diffuse annular fissuring at *L-S1*," and cites to Exhibit 2F, (i.e. Doc. 10-11 at 9). (Doc. 12 at 7). However the Court, after reviewing Doc. 10-11 at 9, assumes that Plaintiff's counsel meant "mild diffuse annular fissuring at *L5-S1*" as the medical record provides.

9

bladder dysfunction. (Doc. 10-11 at 6, Doc. 10-12 at 3, Doc. 10-15 at 11-16, Doc. 10-17 at 40). Plaintiff's primary physician, Dr. Weiskettel, noted in March 2005 that Plaintiff managed his chronic back pain with prescribed medications and activity modification and he suggested that there were no physical restrictions or limitations. (Doc. 10-11 at 11, Doc. 10-16 at 7). One VA doctor noted all tests from 1996-2001 were within normal limits. (Doc. 10-15 at 11, 15).

When consulting physician, Richard T. Sheridan, M.D. (Dr. Sheridan), an orthopedic specialist, examined Plaintiff on June 27 2006, he noted no paravertebral muscle spasm, no motor deficits, normal reflexes, "nondermatomal hypoesthesia in the left lower extremity, somewhat reduced lumbar spine flexion, complaints of pain with superficial palpitation over the sacroiliac joints, positive Waddell rotation tests suggestive of exaggeration and negative Fabere, Patrick, Gaenslen, Bragard, Laseque, and bowstring signs. (Doc. 10-12 at 4-6). Dr. Sheridan noted that the claimant walked with a normal gait, that he sat, stood, and got off the examination table in a normal fashion, and that imagining studies showed "minimal" degenerative disc changes. (*Id.* at 3, 7). Dr. Sheridan offered a diagnosis of chronic back pain, chronic lumbar strain, lumbar degenerative disc disease without evidence of lumbar radiculopathy on clinical examination, and a healed fracture of the right L1 transverse process. (*Id.* at 7-8).

Dr. Sheridan also opined that Plaintiff could lift, push or pull up to twenty pounds frequently and up to fifty pounds infrequently, and bend, stoop, rotate at the waist, and reach from floor to waist occasionally. (*Id.* at 8). ALJ Smith afforded Dr. Sheridan's opinion of claimant's physical functional capacity greater weight than Dr. Lekson as Dr. Sheridan is an orthopedic specialist, rather than a primary care physician, and that he

10

based his conclusions on his own detailed findings after an examination and on his review of imagining studies and other medical evidence in the claim file. (Doc. 10-5 at 12-13). Dr. Sheridan's findings were also consistent with the weight of the evidence in the record, whereas Dr. Lekson's diagnosis appears to be based on Plaintiff's subjective complaints. (*Id.*).

A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services,* 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009). In this case, Plaintiff complains that ALJ Smith should have given Dr. Lekson's opinions significant or controlling weight because they were consistent with other record evidence. (Doc. 12, Doc. 19). However, ALJ Smith explains that the "extreme limitations" Dr. Lekson detailed in his 2007 assessment were inconsistent with his earlier restrictions in August 2006 that Plaintiff simply not have to do any significant lifting or repeated bending. (Doc. 10-5 at 13). *See* 20 C.F.R. §404.1527(d)(4) ("*Consistency.*" Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Even if the Court were to assume that Dr. Lekson's opinions were consistent with other record evidence, it is not necessarily enough to warrant reversal; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). As ALJ Smith explained, Dr. Lekson was a family physician, not an orthopedist, with specific knowledge or expertise regarding Plaintiff's back impairment.

11

(Doc. 10-5 at 13). *See* 20 C.F.R. §404.1527(d)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.").

In addition to relying on Dr. Lekson's diagnosis, Plaintiff argues that the October 1995 x-ray findings, June 1995 discharge from the United States Army, and August 1999 CT scan provide objective support for his limitations. However, they do not. The record shows repeated imagining studies revealed only mild to moderate disc abnormalities with no nerve root involvement or radiculopathy and the neurologic findings which are often times representative of significant pain have also been within normal limits. (Doc. 10-11 at 2-10, Doc. 10-12 at 7-8, Doc. 10-17 at 40).

Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine). Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence. *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2).

In this case, ALJ Smith rejected Dr. Lekson's opinion relating to his assessment of Plaintiff's limitations. Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's RFC is "reserved to the Commissioner." 20 C.F.R. §404.1527(d)(2), §1527(e)(2). In addition, an ALJ may reject a treating physician's opinions, provided that he or she states "good reasons for doing so, as required by 20 C.F. R. §404.1527(d)(2), §1527(d)(2).

In rejecting the limitations assessed by Dr. Lekson, ALJ Smith explained that the opinion of Dr. Lekson limiting the claimant to sedentary work with "extreme limitations" is inconsistent with the record as a whole." (*See* Doc. 10-5 at 13-14). ALJ Smith went on to point out that repeated examinations by treating physicians offered very few objective clinical findings to support the claimant's alleged level of pain. (*Id.* at 14). By way of example, the ALJ provided that Plaintiff had worked for many years at heavy exertional jobs long after he injured and reinjured his back. (*Id.*). The ALJ's rejection of Dr. Lekson's assessment satisfies the "good reasons" requirement. The severe limitations found by Dr. Lekson are not supported by objective medical evidence. Rather, I conclude from a review of the same medical records that substantial evidence supports ALJ Smith's assessment.

### 2. Dr. Plunkett

Plaintiff asserts that ALJ Smith additionally erred in rejecting the opinion of his other treating physician at the VA, Dr. Plunkett, that he was disabled. Plaintiff alleges that Dr. Plunkett opined that the claimant's condition of chronic low back pain has disabled him from substantial gainful employment for more than a year, which opinion ALJ Smith improperly ignored. In addition, Plaintiff argues that ALJ Smith failed to

13

consider Dr. Plunkett's prognosis that he was significantly limited in his ability to perform sedentary exertion and as a result, he would be unable to return to work. (Doc. 10-16 at 20-24).

Prior to addressing Plaintiff's arguments, the Court notes that ALJ Smith did not in fact completely reject Dr. Plunkett's opinions. Although ALJ Smith did not find objective medical evidence to support Dr. Plunkett's prognosis and limitations, ALJ Smith determined that Plaintiff's severe impairments included "a history of right L1 transverse process fracture, chronic lumbar strain, and lumbar degenerative disc disease," which could reasonably be expected to cause "some of the alleged symptoms," which were noted in Dr. Plunkett's records. (Doc. 10-2 at 19, 22).

In a letter written by Dr. Plunkett in support of Plaintiff's SSI and DIB application, dated February 25, 2005, Dr. Plunkett states that Plaintiff is disabled and that he "has had a condition of chronic, progressive spondylotic low back pain since 1995 and reports being confined to bed due to severe back pain associated with his conditions. It has disabled him from substantial gainful employment for more than one year and his condition has a poor prognosis for improvement allowing return to work." (Doc. 10-16 at 25). Further, on February 22, 2008, Dr. Plunkett completed a lumbar spine RFC questionnaire on Plaintiff's behalf. (*Id.* at 20-24). Dr. Plunkett stated that his frequency of contact with Plaintiff was twice a year for a two-year period. (*Id.*). He further opined that Plaintiff had guarded to poor prognosis for functional recovery from lumbar pain, (lumbago), paresthesias/dysesthesias of both legs, and back muscle spasms. (*Id.*). Dr. Plunkett limited the claimant to sitting about two hours in an 8-hour workday, standing/walking less than two hours in an 8-hour workday, needing a job that permitted

shifting positions at will, and being able to lift/carry less than 10 pounds occasionally and 20 pounds rarely. (*Id.*). Glaringly absent from Dr. Plunkett's letter and RFC assessment, however, is a reference to any objective medical evidence to support the claimed diagnosis. Plaintiff himself relies only on the October 1995 x-ray findings, his June 1995 discharge from the United States Army, and the August 1999 CT scan.

As explained above, neither the October 1995 x-ray findings, June 1995 discharge from the United States Army, August 1999 CT scan, nor any other objective evidence in the record supports the opinions reflected in Dr. Plunkett's correspondence and RFC assessment. Subsequent physical examinations and imagining studies revealed only "minimal degenerative changes without any evidence of spinal canal or foraminal stenosis, and all other objective neurological findings, often used to determine severe back pain, were normal. (Doc. 10-18 at 9-10, Doc. 10-17 at 40).

ALJ Smith also points out that from Dr. Plunkett's letter and his use of the verb *"reports,"* it appears as though Plunkett's RFC assessment appears to have been based on the claimant's subjective complaints. (Doc. 10-2 at 21). Specifically, Dr. Plunkett said that he only saw Plaintiff twice a year for two years constituting a total of four times (Doc. 10-16 at 20). At Plaintiff's hearing on January 20, 2009, Plaintiff stated that he was not physically present during Dr. Plunkett's completion of the RFC questionnaire and that Dr. Plunkett asked him what he could do and could not do before completing said assessment. (*See* Doc. 10-3 at 23). The Court notes that this is hardly a "treating doctor" who is very familiar with Plaintiff's case.

ALJ Smith carefully explained that although Plaintiff is seen by Dr. Plunkett only twice a year, he allegedly reports that Plaintiff has exacerbations of his low back pain at

15

least once a month and would miss work more than four days per month. ALJ Smith continued by asserting that Dr. Plunkett would only know this from what Plaintiff told him, not from treating Plaintiff during these periods of exacerbation. (Doc. 10-2 at 21). ALJ Smith's explanation for rejecting Dr. Plunkett's diagnosis is supported by substantial evidence and satisfies the "good reasons" requirement. Likewise, the rejection of Dr. Plunkett's opinion that Plaintiff is "totally disabled" was not error because "[u]ltimately…the determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985).

### C. Credibility Assessment and Evaluation of Pain

Plaintiff's second statement of error finds fault with ALJ Smith's conclusion that his testimony was not entirely credible. Specifically, Plaintiff claims that ALJ Smith failed to consider that his persistent efforts to obtain pain relief enhanced his credibility under Social Security Ruling 96-7. With respect to his complaints of back and shoulder pain, Plaintiff alleges that ALJ Smith failed to adequately consider Plaintiff's statements, efforts to obtain medication, and usage of various devices, including: ice packs, heating pads, massage, pillows, and a TENS unit to alleviate his pain. (Doc. 10-3 at 10, Doc. 10-4 at 16, 18-23, Doc. 10-13 at 37).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's

16

findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

In this matter, ALJ Smith noted various factors in her two decisions which caused her to question Plaintiff's credibility. For instance, she noted that while Plaintiff's impairments apparently stemmed from injuries he sustained in the 1980s and 1990s, Plaintiff continued to work for several years at very physical jobs. (Doc. 10-2 at 21). In addition, ALJ Smith noted that Plaintiff had sole custody of his three children (11 years, 7 years, and 9 months old), and that he took care of them while his second wife maintained a full time job. (*Id.* at 20-21). As Plaintiff reported during a psychological exam on August 18, 2008, he could "function and take care of" his children. (Doc. 10-16 at 28). ALJ Smith also noted that at least one VA physician who had treated Plaintiff thought that Plaintiff's chronic back pain had "a heavy somatic focus out of proportion to the physical findings and imagining reports." (Doc. 10-5 at 13).

ALJ Smith did find that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," (Doc. 10-2 at 22, Doc. 10-5 at 14), and that Plaintiff "has severe back impairments that significantly limit his ability to perform basic work activities." (Doc. 10-5 at 14). However, in reviewing

17

Plaintiff's multiple RFC assessments, ALJ Smith also found that Plaintiff's statements concerning the severity, intensity, persistence, and limiting effects of his symptoms were not credible to the extent that there were inconsistent with said assessments. (Doc. 10-2 at 22, Doc. 10-5 at 14).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Here, ALJ Smith noted that objective tests including EMG, bone scan studies, lumbar spine and hip x-rays showed completely normal results. Further, medical examiners and treatment providers repeatedly found that neurological findings on examination were completely within normal limits and citied normal gait. (Doc. 10-11 at 6, Doc. 10-12 at 3, Doc. 10-15 at 11-16, Doc. 10-17 at 40). A lumbosacral spine MRI performed in May 2005 was normal except for evidence of reversal of normal lordotic curvature (Doc. 10-13 at 24), while an imaging study obtained in March 2007 demonstrated moderate degenerative narrowing of the L5-S1 disc space. (Doc. 10-15 at 3). In addition, ALJ Smith specifically recognized that repeated imaging studies revealed only mild to moderate disc abnormalities with no nerve root involvement or radiculopathy. (Doc. 10-2 at 22, Doc. 10-5 at 14).

Therefore, because ALJ Smith found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of his pain and limitations, it was permissible for her to discredit Plaintiff's testimony about the severity of his symptoms. As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Smith's decision to discredit Plaintiff's

statements about the severity of his symptoms.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED,** and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PETER FREUDENBERGER,

      Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:09-cv-745

Spiegel, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).